[Cite as *State v. Albright*, 2016-Ohio-7037.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 14 MA 0165 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MICHAEL A. ALBRIGHT, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Struthers
Municipal Court of Mahoning County,
Ohio
Case No. CRB 1300331B

JUDGMENT:     Affirmed in part, Reversed in part,
Remanded for resentencing.

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  September 27, 2016

[Cite as *State v. Albright*, 2016-Ohio-7037.]
APPEARANCES:

For Plaintiff-Appellee:

Atty. Dominic Leone, III
Law Director
6 Elm Street
Struthers, Ohio 44471

Atty. Edward Czopur
DeGenova & Yarwood, Ltd
42 North Phelps Street
Youngstown, Ohio  44503

For Defendant-Appellant:

Atty. Charles Dunlap
Atty. Desirae DiPiero
7330 Market Street
Youngstown, Ohio  44512

ROBB, J.

{¶1} Defendant-Appellant Michael Albright appeals his conviction in the Struthers Municipal Court for obstructing official business. He contends the state failed to present sufficient evidence because he had "privilege" to interfere with an officer's pursuit of two individuals who fled up his driveway and into his back yard. Appellant also raises ineffective assistance of counsel, claiming counsel should have filed a motion to suppress statements he made after the officers entered the back deck and should have objected to the admission of the police report.

{¶2} These arguments lack merit; Appellant's conviction is affirmed. Regarding sentencing, Appellant asserts his allocution rights under Crim.R. 32(A)(1). As conceded by the state, the allocution argument has merit and requires resentencing.

STATEMENT OF THE CASE

{¶3} On July 2, 2013, Appellant was arrested at his home in Poland, Ohio. Charges were filed against him in the Struthers Municipal Court for assault and obstructing official business. He retained an attorney to represent him. The case was tried to a jury in May 2014. The jury heard testimony that a police dispatcher received a report of a wild party with underage drinking taking place at a house on Shepherds Ridge Road in Poland Township; a description of the house was provided. (Tr. 25-27). Poland Township police officers were dispatched in response. They planned to approach the house and make contact with the homeowner. (Tr. 62-63).

{¶4} Officer Mrakovich, who had 26 years of police experience, was the first to arrive at the house matching the description reported in the call. (Tr. 67, 78). Officer Jackson arrived soon thereafter. (Tr. 41). There were two rows of cars parked down a long driveway. (Tr. 44-45). While parking his vehicle, Officer Mrakovich saw two males in the front yard. (Tr. 69). He believed they were under the age of 21. (Tr. 70, 80). One had an object in his hand, but the officer could not identify it. (Tr. 70). When the officer voiced that he wanted to speak with them, the two individuals ran down the driveway. (Tr. 70).

**{¶5}** The officer ran down the driveway in pursuit. (Tr. 70). However, Appellant exited the garage, came down the drive, and stood in the officer's path between two parked cars. (Tr. 70-71). The two fleeing suspects entered the back yard from which the officer heard a commotion. (Tr. 79). Appellant, who was 21, appeared to be intoxicated. (Tr. 52, 76). He was also described as belligerent. He claimed to be the homeowner, refused to let the officer pass him, and ordered the officer off the property. (Tr. 71, 77, 81).

**{¶6}** Officer Mrakovich testified Appellant put his arms up to block the officer from proceeding, touching the officer in the process. (Tr. 71). When Officer Jackson arrived at the bottom of the drive, Officer Mrakovich informed him about the two individuals who ran from him. (Tr. 72-73). Officer Mrakovich tried to proceed again.

**{¶7}** This time, Appellant used both arms to push the officer backward. (Tr. 71, 76-77). The officer said he gave Appellant "an order to keep his hands off me." (Tr. 72). At that point, both officers evasively maneuvered around opposite sides of Appellant in order to reach the back yard and to investigate the two individuals who fled. (Tr. 72-74).

**{¶8}** Appellant continued to berate the officers and to scream at them. (Tr. 74). Appellant kept getting in their way and arguing, which required them to take their attention off the investigation. (Tr. 74). Officer Mrakovich checked the back yard but did not spot the two individuals who ran. (Tr. 75). He opined Appellant prevented him from pursuing his investigation. (Tr. 83-84).

**{¶9}** Officer Jackson confirmed Appellant was yelling at Officer Mrakovich in the driveway when he arrived at the bottom of the drive. When he was 15 feet away, he saw Appellant put his arms up; he demonstrated for the jury. (Tr. 46). Officer Jackson did not see the push, but he heard Officer Mrakovich say, "Don't put your hands on me." (Tr. 47, 55). As he approached, he heard bottles clinking, banging, and breaking over Appellant yelling. Based upon his experience, this sounded like "people trying to hurry up and hide the beer."

**{¶10}** When he entered the back yard, he saw 12-15 people. (Tr. 48). Officer Jackson asked them if they saw the two males who ran toward the back yard. Appellant yelled that they should not speak to the police because they were

trespassing and because he was capable of telling people not to talk as the property owner. (Tr. 49, 51). He disclosed that Appellant yelled at his father when he alighted from the house. (Tr. 53). Appellant's sister came out of the house to yell at the police. (Tr. 53). Officer Jackson arrested Appellant. (Tr. 53). He expressed that Appellant prevented them from fully investigating by not letting Officer Mrakovich get past him, by shifting the focus to himself, and by loudly advising people not to talk to police. (Tr. 50-51).

{¶11} After the state's case was presented, the defense filed a motion for acquittal. As to the assault charge, the defense argued there was no physical harm or attempt to cause physical harm. (Tr. 87). On the obstruction charge, it was asserted the obstruction was not performed "without privilege to do so" as Appellant had privilege as resident of the house to deny police permission to investigate. (Tr. 87-90). The court denied the motion.

{¶12} Appellant then testified in his own defense. He saw the two individuals run past him into his back yard. (Tr. 110-111). He said he did not know them. (Tr. 110). He suggested they alighted from their vehicle, started walking in his front yard, saw the police, and ran. (Tr. 111). He said he went to meet Officer Mrakovich at the bottom of the drive to advise him he needed a warrant to enter his property or he would have to wait for his father to get home. (Tr. 96, 111). He acknowledged he blocked the path of Officer Mrakovich. (Tr. 97). He said Officer Jackson rushed past him causing him to bump into Officer Mrakovich. (Tr. 98-99).

{¶13} Appellant then followed the officers down a sidewalk leading to the back porch. (Tr. 99). He testified that he said, "If you want to see what's really going on, by all means help yourself." (Tr. 9). When they arrived in the back yard, he told his guests not to talk to the police and to videotape them. (Tr. 122). He confirmed there were 15 people at the party, which he said was for his sister's friend. (Tr. 101). He disclosed that his sister and her friends were 18. (Tr. 108). He claimed no one was drinking, but he then acknowledged he drank one beer. (Tr. 109).

{¶14} Appellant's father testified that people started coming over at 8:30 or 9:00 p.m. (Tr. 143). He noted his daughter and her friends were all adults as they were over 18. (Tr. 135, 143, 153). He watched television and went up to bed shortly

before 11:00 p.m. (Tr. 133, 144). He did not see his daughter or her friends drinking. (Tr. 144-145). His wife called him downstairs due to the police presence. He said his son was on the back porch claiming an officer pushed him. (Tr. 135, 144). Although the officer told his son to sit down, he told his son to enter the house. He said Officer Jackson followed his son into the house and arrested him in a rough manner. (Tr. 135-136).

{¶15} On May 15, 2014, the jury returned a not guilty verdict on the assault charge and guilty verdict on the charge of obstructing official business. A presentence investigation was ordered. At the November 5, 2014 sentencing hearing, the court sentenced Appellant to 90 days in jail, which is the maximum sentence for the second-degree misdemeanor obstruction charge. The court also imposed a $750 fine with court costs.

<u>ASSIGNMENT OF ERROR ONE: SUFFICIENCY</u>

{¶16} Appellant sets forth three assignments of error, the first of which alleges:

"APPELLANT WAS CONVICTED OF OBSTRUCTING OFFICIAL BUSINESS BASED UPON INSUFFICIENT EVIDENCE."

{¶17} Sufficiency of the evidence is a question of law dealing with legal adequacy of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). It is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). A Crim.R. 29 motion for acquittal is based upon the sufficiency standards. *See, e.g., State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995). In Appellant's Crim.R. 29 motion for acquittal, he argued he was privileged to deny access to his property.

{¶18} In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A sufficiency review is distinct from an evaluation of the weight of the evidence which involves the persuasiveness of the evidence. *Thompkins*, 78 Ohio St.3d at 386. A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines

that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Goff*, 82 Ohio St.3d at 138.

{¶19} The elements of obstructing official business are set forth in R.C. 2921.31, which provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A). Privilege is defined by statute as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶20} Appellant argues that the state failed to show his obstruction of the officer's entry onto his property was "without privilege." He also states the officers were not engaging in an "authorized act" or performing "lawful duties." He argues he had a legitimate expectation of privacy in the curtilage of his home, such as the back deck. He claims the officers had no right to enter his property absent an exception to the warrant requirement. Appellant urges the hot pursuit exception must be supported by probable cause to arrest. He says an anonymous call about underage drinking combined with two males who fled from the front yard is not sufficient to provide probable cause to arrest the fleeing males for underage drinking.

{¶21} Appellant concludes he had a privilege to resist the officer's entry onto his protected curtilage. He relies on the premise that where demanded entry is not justified under the Fourth Amendment, the resident has a constitutional right to insist on a warrant and cannot constitutionally be convicted for refusing to consent to the inspection. *See Camara v. Municipal Court of City & Cty. of San Francisco*, 387 U.S. 523, 540, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

{¶22} The state points out Appellant obstructed the officers in the driveway, which is impliedly open for use as an access route to the house. The state says the officers were permitted to approach the house by proceeding up the driveway. The state also claims the entry into the back yard was permissible. The state asserts the right to conduct a *Terry* stop upon reasonable suspicion (as opposed to probable

cause) as to the two males who fled; the doctrine of hot pursuit is alternatively proposed.

**{¶23}** The Fourth Amendment protects individuals from governmental searches and seizures in places where they have a reasonable expectation of privacy, such as their homes. The Ohio Constitution provides the same protection at Section 14 of Article I. *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, fn. 2. In accordance, an officer with an arrest warrant for one person cannot enter the residence of another person to effect the warrant (absent an exception to the search warrant requirement). *Steagald v. United States*, 451 U.S. 204, 214-215, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (the arrest warrant, which ensures the rights of the one named in the warrant, did not satisfy the rights of the person whose home was entered). The case before us does not involve the entry into a home, but the concept of curtilage has been invoked here.

**{¶24}** Curtilage is the area "to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.' " *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). It is the area "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

**{¶25}** The following factors are "useful analytical tools" to assist in determining whether a certain space is considered part of the home's curtilage: (1) the proximity of the area to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken to protect the area from observation by passersby. *Id.* It has been stated that the boundaries of curtilage are generally clearly marked. *Florida v. Jardines*, __ U.S. __, 133 S.Ct. 1409, 1415, 185 L.Ed.2d 495 (2013). The front porch has been called a classic example of curtilage. *Id.* Here, the back deck would also fall within the category of curtilage; the state does not appear to contest this assertion. Inclusion of the driveway and the back yard as part of the home's curtilage will now be examined.

{¶26} The Fourth Amendment does not prevent all investigations conducted on private property. There is no constitutional difference between police observations conducted while in a public place and those conducted while standing in the open fields around a dwelling. *Dunn*, 480 U.S. at 304. Open fields are not considered curtilage. *Jardines*, 133 S.Ct. at 1414, citing *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) (moonshine whiskey seized from yard where fleeing suspect dropped it did not violate Fourth Amendment protection).

{¶27} Merely because a homeowner's open field would be covered by the law of trespass does not mean it is protected by the Fourth Amendment. *Oliver v. United States*, 466 U.S. 170, 183-184, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (government intrusion into a field, even one which owner attempted to shield from public view, is not an intrusion that infringes upon the personal and societal values protected by the Fourth Amendment). Whereas curtilage or "homestall" is protected due to its intimate connection to the home, an open field does not have that connection or that protection. *Jardines*, 133 S.Ct. at 1414-1415. Notably, "[a]n open field need be neither 'open' nor a 'field' as those terms are used in common speech." *Dunn*, 480 U.S. at 304.

{¶28} Even if a certain area around a home qualifies as curtilage, this does not per se mean an officer cannot enter the area without a warrant. A police officer conducting an investigation may enter the areas of the curtilage which are impliedly open to use by the public. *See Jardines*, 133 S.Ct. at 1414-1415. For instance, there is an implicit license for visitors to approach a home and knock. *Id.* at 1415-1416 (the process "is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters."). In accordance, an officer may enter the front porch to knock. *Id.* (but cannot conduct a search on the porch with a drug dog).

{¶29} Where an officer reasonably believes a back door or side door is used by visitors, some courts have permitted the officer to knock at those doors. *See Carroll v. Carman*, __ U.S. __, 135 S.Ct. 348, 350-352, 190 L.Ed.2d 311 (2014) (citing cases to show the officer did not violate a clear right, which is the standard in a 1983 action against an officer). Moreover, some courts hold that when the officer restricts his movements to places visitors could be expected to go, such as

walkways, driveways, and porches, observations made from such vantage points are not covered by the Fourth Amendment. *See Carroll*, 135 S.Ct. at 351, citing *Estate of Smith v. Marasco*, 318 F.3d 497, 519 (C.A.3 2003).

**{¶30}** In addition, there are reasonable exceptions to the warrant requirement. Some exceptions to the prohibition on warrantless entries involve exigent circumstances such as: hot pursuit; prevention of imminent destruction of evidence; and emergency aid. *See, e.g., Kentucky v. King,* 563 U.S. 452, 460, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011).[1] The hot pursuit entry exception does not require a drawn out chase throughout the public streets. *U.S. v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

**{¶31}** In the seminal hot pursuit case of *Santana*, the police went to the defendant's house after she sold heroin to their informant. The defendant was standing in her doorway, directly on the threshold. When police approached with their identifications out, she retreated into her home. The police followed her to make the arrest. As she held herself out to the public at the time the arrest was set in motion, the Court found the defendant was in a public place (for purposes of when the arrest process started), even though she was standing on the threshold of her front door. *Id.* at 42. Utilizing the hot pursuit doctrine, the Court concluded that the defendant's entry into her home could not thwart the warrantless arrest which had been set in motion in a public place. *Id.* The Court also recognized the chance for destruction of evidence. *Id.*

**{¶32}** The Ohio Supreme Court extended this principle to a case where the pursuit was to issue a citation for the minor misdemeanor of reckless operation. *Middletown v. Flinchum*, 95 Ohio St.3d 43, 765 N.E.2d 330 (2002) (where the defendant spun his tires when a light turned green and then caused the car to "fishtail" upon turning). The police officer did not activate the cruiser's lights or sirens.

---

[1] The general exceptions to a warrant have been listed as: stop and frisk; hot pursuit; probable cause plus the presence of exigent circumstances; search incident to arrest; consent; plain view; and administrative search. *Stone v. Stow*, 64 Ohio St.3d 156, 165, 593 N.E.2d 294 (1992), fn. 4. *See also Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (seemingly agreed with state supreme court's holding that warrantless entry to prevent the imminent destruction of evidence may be justified when combined with probable cause); *Mincey v. Arizona*, 437 U.S. 385, 395, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (warrantless entry permitted if officer has reasonable belief a person is in immediate need of aid); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (voluntary consent freely given).

When the police reached the vehicle, it was parked and appellant was standing beside it. As he began running toward the back door of his house, the police yelled for him to stop. *Id.* at 43, 47. He did not stop, and they pursued him into his house to cite him for reckless operation. *Id.* at 43-44 (upon observing him, they added a charge for OVI).

**{¶33}** The Ohio Supreme Court concluded that, to allow the defendant to evade arrest by running into his home "would create the illusion that flight from police officers is justified and reasonable as long as no felony offense has been committed." *Id.* at 43. The Court found no reason to distinguish the case from *Santana. Id.* at 45. The Court concluded that where officers approach a person they have probable cause to arrest or issue a citation, the pursuit into the home is lawful if the suspect ignores their commands to stop and flees into his house. *Id.*

**{¶34}** If a police officer has a reasonable, articulable suspicion, in light of his experience, that criminal activity may be afoot, the officer may conduct an investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officer must be able to point to specific and articulable facts which, when taken together with rational inferences to be drawn from those facts, reasonably warrant the investigatory stop. *Id.* at 21-22. The totality of the circumstances must be considered. *See State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489, 490 (1988) (providing examples of factors that can be relevant: setting, time, experience, knowledge, and type of behavior). The reasonable suspicion standard for a *Terry* stop is more than a hunch but less than probable cause. *State v. Starcher*, 7th Dist. No. 13 JE 1, 2013-Ohio-5533, ¶ 17.

**{¶35}** The Fourth Amendment does not require an officer to "shrug his shoulders" at suspected criminal activity where he lacks the precise level of information necessary for probable cause to arrest. *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The "*Terry* stop" allows the officer to briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions. *Terry*, 392 U.S. at 30. In a consensual encounter with a citizen, which includes a conversation initiated by an officer with a mere hunch, an officer can ask for identification. *Starcher*, 7th Dist. No. 13 JE 1 at ¶

23. Where there is reasonable suspicion, a refusal to provide a name and address is an offense in itself. R.C. 2921.29(A)(1) (and date of birth, if such is not an element of the offense).

**{¶36}** A tip can be considered as part of the totality of the circumstances; depending on the degree of reliability of a tip, police may need more information to stop a suspect. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). An anonymous tip may supply reasonable suspicion justifying a stop if there is independent corroboration of the tip or additional information gathered by the officer upon viewing unfolding events. *Id.*

**{¶37}** Here, the police dispatcher received a call at 10:46 p.m. reporting a wild party with underage drinking at a tan house with some brick on a cul-de-sac street called Shepherds Ridge. The officers testified to their intent to establish contact with the homeowner by knocking on the door. Approaching a permissible door would have been the type of "knock and talk" allowed by the case law. Upon arrival at a house matching the description provided, the police officer noticed the long driveway of the house was lined with cars.

**{¶38}** Two males were in the front yard when the officer parked his cruiser. From their appearance, the officer believed they were under 21 years of age. The rationality of his belief is a question of weight, not sufficiency, of the evidence. At least one of males had something in his hand, but the officer could not identify it from where he parked. The officer asked them to come speak with him. However, they ran from him.

**{¶39}** A suspect subject to a lawful *Terry* stop who flees can be seen as obstructing an investigation. *See, e.g. State v. Harris*, 10th Dist. No. 05AP-27, 2005-Ohio-4553, ¶ 16 ("fleeing from a police officer who is lawfully attempting to detain the suspect under the authority of *Terry*, is an affirmative act that hinders or impedes the officer in the performance of the officer's duties as a public official and is a violation of R.C. 2921.31, obstructing official business."). *See also State v. Certain*, 180 Ohio App.3d 457, 2009-Ohio-148, 905 N.E.2d 1259, ¶ 15 (4th Dist.) (collecting cases).

**{¶40}** The parties do not specifically discuss whether there was reasonable suspicion to conduct a *Terry* stop when the officer first spoke to the suspects.

However, at that time: the officer was responding to a complaint about a wild party with underage drinking; he pulled up to a house where a party was clearly taking place; he spotted two males in the front yard; they both appeared to be under 21; and one was holding something the officer could not identify.

{¶41} After the subjects ran, there was clearly reasonable suspicion justifying an investigatory stop. Pursuing the individuals to conduct a *Terry* stop was an authorized act within the officer's official capacity and was part of his lawful duties. Appellant does not contend the officer lacked reasonable suspicion to stop the two males. Rather, in supporting his claim of privilege, Appellant contends that a hot pursuit which proceeds into the home or its curtilage must be supported by probable cause (not mere reasonable suspicion).[2] Appellant argues that probable cause to arrest the two individuals was lacking. If there was probable cause to arrest one of the two fleeing suspects, then the hot pursuit doctrine would have provided the officers the right to follow the suspects to the curtilage encompassed by the back porch.

{¶42} Appellant does not particularize any argument that the officers were prohibited from entering the front yard and the driveway; they had implicit license to use the driveway to reach a permissible "knock and talk" point. At the point of Appellant's intervention, the officer was in a driveway lined with cars. As aforementioned, the officers were permitted to use the driveway and to enter the curtilage to knock on the door to investigate the call to police.

{¶43} As events unfolded, this plan was interrupted: two males, who appeared to be under 21, fled after an officer asked them to come forward from the front yard. As the officer pursued them down the driveway, his path between two cars was blocked by Appellant. Thus, during their investigation of a complaint about a wild party, they are confronted with a belligerent person who yelled and was under the influence of alcohol.

---

[2] We note that some courts have concluded that *Terry* stops can occur in the curtilage, especially if the stop began outside of the curtilage. *See Cortez v. McCauley*, 478 F.3d 1108 (10th Cir.2007), fn. 10, citing *United States v. Pace*, 898 F.2d 1218, 1228-1229 (7th Cir.1990). We also note the United States Supreme Court's main hot pursuit case, *Santana*, dealt with evading an *arrest*, and the Ohio Supreme Court's *Flinchum* case spoke of entry where the suspect fled into the house to evade an *arrest*.

**{¶44}** When Appellant moved into his obstructive position, the officer was not demanding access to a house, garage, or porch. The officer was proceeding down a driveway during a lawful *Terry* stop. Besides the ability to use a driveway to "knock and talk," the part of a driveway used as a public approach to a dwelling is typically excluded from protection as curtilage; Appellant's brief does not specifically claim otherwise. *See State v. Mitchem*, 1st Dist. No. C-130351, 2014-Ohio-2366, ¶ 16.

**{¶45}** Upon fleeing up the driveway, the suspects entered the back yard. There was no indication the yard was fenced, contained in an enclosure with the house, or was otherwise shielded. One could conclude the officer was entitled to proceed *to the back yard*, an open field by all indications, when in pursuit of fleeing individuals subject to at least a *Terry* stop. *See Hester*, 265 U.S. 57 (no Fourth Amendment violation where an officer seized a jar, which was discovered to contain whiskey, after the fleeing suspect dropped it in his father's yard as the special protection afforded to houses does not extend to open fields).

**{¶46}** Appellant's active and physical behavior in the driveway could be viewed as being performed "without privilege." Appellant appeared drunk but was 21, yelled at the officer, ordered him off of the property, blocked the officer's procession between cars in the driveway with his body and arms, and touched the officer twice.

**{¶47}** *The second time Appellant touched the officer, he pushed the officer hard enough to cause him to step back.* (Appellant contested this testimony when he testified in his own defense, but in reviewing sufficiency, we take the evidence in light most favorable to the state.) We note the Tenth District found a lack of privilege to obstruct an officer's entry where the resident forcibly touched the officer (distinguishing between passive and active resistance) and where the officer did not act in bad faith in believing he was acting under the emergency exception to the warrant requirement. *Columbus v. Montgomery*, 10th Dist. No. 09AP-537, 2011-Ohio-1332, ¶ 96-99.

**{¶48}** Viewing the evidence in the light most favorable to the state, a rational person could conclude Appellant's acts in the driveway were without privilege and the

officer's use of the driveway was lawful.[3] At that point, Appellant's behavior further strengthened the officer's belief the two males had been drinking while underage. During the suspects' continued flight to or through the back yard, the officers heard commotion behind the house. That is, after the flight of the suspects to the back yard and before any entry by the officers onto the back porch, the sound of bottles breaking or banging could be heard. As one officer explained, the noise indicated to him that people were trying to hurry and hide the beer.

**{¶49}** One could conclude the reasonable suspicion changed to probable cause mid-pursuit and prior to any attempted entry of an area protected by the Fourth Amendment. If there was probable cause to support the hot pursuit of one or both of the two fleeing individuals, entry onto the back porch was permissible.[4]

**{¶50}** Even if the evidence did not rise to a level of probable cause with regards to the fleeing suspects and the officers should not have moved onto the back porch from the back yard, then Appellant had already unlawfully obstructed the police during a *Terry* stop in an area they were lawfully permitted to be. The officers' subsequent entry onto the back porch (curtilage) did not eliminate Appellant's prior behavior during an investigatory stop that was initiated in a non-curtilage area. This assignment of error is overruled. The procedure for challenging the admission of subsequent events would have been a suppression motion, the lack of which Appellant raises in the next assignment of error.

<u>ASSIGNMENT OF ERROR TWO: LACK OF SUPPRESSION MOTION</u>

**{¶51}** Appellant's second assignment of error contends:

"DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO FILE A MOTION TO SUPPRESS STATEMENTS MADE BY

---

[3]The state does not argue this, but we note how various courts have ruled that the phrase "without privilege" is not an essential element of obstructing and that it is the defendant's burden to present privilege as an affirmative defense to an obstruction charge. *See, e.g., State v. Luke,* 4th Dist. No. 09CA30, 2010-Ohio-4309, ¶ 16-19 (finding the issue waived by failing to present evidence on privilege below); *Middleburg Hts. v. Szewczyk,* 8th Dist. No. 89930, 2008-Ohio-2043 at ¶ 24, citing *State v. Williams,* 8th Dist. No. 83574, 2004-Ohio-4476, ¶ 38, citing *State v. Foster,* 3d Dist. No. 13-97-09 (Sept. 17, 1997); *State v. Gordon,* 9 Ohio App.3d 184, 186-187, 458 N.E.2d 1277 (1st Dist.1983). In any event, Appellant's "privilege" was a contested issue below and is based in part on a question of constitutional law.

[4] Appellant testified that, after the officers proceeded to the back yard, he said, "If you guys want to see what's really going on, by all means help yourself." However, this was after his attempted denial of access to the back yard and after the officer said he would go to jail if he got in the way again. (Tr. 120). In addition, this was not presented in the state's case, and officers did not claim consent.

APPELLANT AFTER THE ILLEGAL, WARRANTLESS ENTRY BY THE POLICE ONTO HIS PROPERTY AND BY FAILING TO OBJECT TO THE ADMISSION OF POLICE REPORTS AS EVIDENCE."

**{¶52}** We review a claim of ineffective assistance of counsel under a two-part test, which requires the defendant to show: (1) his lawyer's performance fell below an objective standard of reasonable representation; and (2) prejudice arose from the lawyer's deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 104, S.Ct. 2052, 80 L.Ed.2d 674 (1984). As both prongs must be established, if the performance was not deficient, then there is no need to review for prejudice, and vice versa.

**{¶53}** In evaluating the alleged deficient performance, our review is highly deferential to counsel's decision as there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Bradley*, 42 Ohio St.3d at 142-143, citing *Strickland*, 466 U.S. at 689. *See also State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995) (a defendant must overcome the strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy). There exist "countless ways to provide effective assistance in any given case." *Bradley*, 42 Ohio St.3d at 142, citing *Strickland*, 466 U.S. at 689.

**{¶54}** To show prejudice, a defendant must prove his lawyer's error was so serious that there is a reasonable probability the result of the proceedings would have been different but for the error. *Carter*, 72 Ohio St.3d at 558. Lesser tests of prejudice have been rejected: "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley*, 42 Ohio St.3d at fn. 1, quoting *Strickland*, 466 U.S. at 693. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding fundamentally unfair due to the performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

**{¶55}** Appellant makes two allegations of ineffective assistance of counsel. First, Appellant contends defense counsel should have filed a motion to suppress his

statements made after the officers proceeded to the back porch: he told his guests not to talk to officers and to videotape the officers. Appellant testified that the officers walked onto the back porch. (Tr. 99). Officer Jackson was on the back porch for some time before arresting Appellant, while Officer Mrakovich went to the front of the house to ring the doorbell. (Tr. 100-101, 121, 123-124). Officer Jackson testified that when he arrived in the back yard and asked the partygoers if they had seen two males run to the back yard, Appellant "yelled at people not to talk to us, to video us, you know, because we were trespassing." (Tr. 49). Officer Mrakovich testified that he observed Appellant interfere with Officer Jackson talking to witnesses. (Tr. 75). He also heard Appellant tell people to take video with their phones. (Tr. 76).

{¶56} Appellant contends these statements should have been suppressed because they were made after the officers' illegal entry. He points to the arguments made under assignment of error number one and says the officers should not have proceeded to the back yard or back porch.

{¶57} The state cites its arguments under the first assignment of error as to why the officers' entry onto the premises was lawful. The state alternatively argues Appellant failed to show prejudice as there was sufficient evidence to sustain an obstructing conviction without his statements to the other partygoers.

{¶58} Counsel's failure to file a motion to suppress does not constitute ineffective assistance of counsel per se. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65, citing *State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). A defendant must prove there was a basis to suppress the evidence in question. *Brown*, 115 Ohio St.3d 55 at ¶ 65. A trial court's decision to deny a motion to suppress involves a mixed question of law and fact: legal question are reviewed de novo, but factual issues are rarely disturbed as the trial court is the fact-finder at the suppression hearing and occupies the best position to evaluate witness credibility. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100.

{¶59} Moreover, in evaluating deficient performance for failure to file a suppression motion, the court must consider whether counsel made a tactical decision. *Madrigal,* 87 Ohio St.3d at 389 (noting that a suppression motion is not

without risks). Evidence that counsel fully investigated the case is relevant in this deficiency evaluation. *See id.* In certain cases, counsel may not want to suppress statements of the defendant. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 29-32 (counsel may have made a tactical judgment that the best way to defend the case was to permit the defendant's strong claims of innocence to be admitted into evidence). Where counsel has not yet ascertained whether the defendant is going to testify (and expose himself to cross-examination among other potentially negative aspects of testifying), counsel may strategically permit statements to be admitted on the belief they assist the defendant. *See id.* at 32-34 (counsel may allow the defendant's exculpatory explanation of events to be placed in evidence to avoid the risk of having the defendant take the stand).

{¶60} Here, it is clear counsel fully investigated the case prior to the jury trial. A defense strategy was to convince the jury the defendant was merely asserting his rights to reject entry onto his property. Although his yelling in the back of the house was said to interfere with the police investigation, statements informing his guests about what he believed were their rights was in line with his defense. His statement about videotaping the officers was not inculpatory but fit with the tactic of making the police look overbearing. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681.

{¶61} Furthermore, even if the motion may have been granted, there must be a reasonable probability that the defendant would not have been found guilty if the evidence had been suppressed. *Id.* at 389-390 (finding, "[t]he exclusion of the gun would not undermine confidence in the outcome."). Here, there was compelling evidence of obstruction occurring in the driveway prior to Appellant's statements to his guests on the back porch. Accordingly, Appellant's first allegation of ineffective assistance of counsel is overruled.

{¶62} For his second allegation of ineffective assistance of counsel, Appellant argues his counsel should have objected to the admission of the police report into evidence. Appellant cites Evid.R. 803(8) in support of his argument that police

reports are inadmissible hearsay in a criminal case unless offered by the defendant. He points out the state cannot prove its case through police reports.

{¶63} Pursuant to Evid.R. 803, certain types of evidence are not excluded by the hearsay rule even if the declarant is available. The hearsay exception for public records and reports provides:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant*, unless the sources of information or other circumstances indicate lack of trustworthiness.

(Emphasis added). Evid.R. 803(8).

{¶64} Therefore, police reports that "recite an officer's observations of criminal activities or observations made as part of an investigation of criminal activities" are inadmissible hearsay. *State v. Leonard*, 104 Ohio St.3d 54, 75, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 111, quoting *State v. Ward*, 15 Ohio St.3d 355, 358, 474 N.E.2d 300 (1984). In *Leonard*, the defendant objected to admission of the police reports. *Leonard*, 104 Ohio St.3d 54 at ¶ 109. The Supreme Court agreed there was error but found the error harmless. *Id.* at ¶ 111. Here, there was no objection.

{¶65} Pursuant to Evid.R. 103(A)(1), error cannot be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a timely objection or motion to strike appears of record. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). However, "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A).

{¶66} Appellant characterizes the issue as ineffective assistance of counsel, but the failure to object to error, alone, does not establish a deficiency. *See State v. Campbell*, 69 Ohio St.3d 38, 52-53, 630 N.E.2d 339 (1994). An attorney can

reasonably hesitate to object to certain matters on the theory that objections disrupt the flow of a trial and can be considered over-technical and bothersome by a jury. *Id.* at 52, citing, Jacobs, *Ohio Evidence*, iii-iv (1989). As aforementioned, even if there is a deficient performance, the defendant must show the results were unreliable or the proceeding fundamentally unfair due to the performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, citing *Lockhart*, 506 U.S. at 369.

**{¶67}** Here, defense counsel raised an issue with the police report during cross-examination of Officer Jackson. Counsel asked if the officer drafted a report and what he did with the report. (Tr. 56). He asked if the officer had an opportunity to review the report since handing it in; the officer responded that he had it in his hand. (Tr. 56-57). Defense counsel asked if the report refreshed the officer's memory. He then pointed out parts of Officer Jackson's testimony that did not align with the report.[5] (Tr. 57-59, 64).

**{¶68}** On redirect examination by the prosecution, the police report was offered, without objection, as State's Exhibit A. Officer Jackson explained that the report was a collaboration between himself and the other officer. (Tr. 65). When the other officer subsequently testified, the prosecutor presented him with the exhibit and asked if it was a fair and accurate representation of what happened that night. Officer Mrakovich responded that it was. (Tr. 68). At the close of the state's case, the prosecutor asked for the exhibits to be admitted into evidence. The court asked defense counsel if he had any objection, and counsel responded that he did not. (Tr. 84).

**{¶69}** Defense counsel had a strategic reason for raising the variances between the report and the testimony. It could be characterized as trial strategy by not objecting to the admission of the report as an exhibit. There is a wide range of reasonable assistance in any given case, and scrutiny of counsel's failure to object must be highly deferential. *See State v. Herring*, 142 Ohio St.3d 165, 197, 2014-Ohio-5228, 28 N.E.3d 1217, ¶ 139. *See also Carter*, 72 Ohio St.3d at 558 (strong presumption the challenged action might be considered sound trial strategy).

---

[5] It turned out to be a joint report which contained the observations of both officers, e.g. it contained some observations of Officer Mrakovich that were not observed by Officer Jackson.

**{¶70}** In addition, the state did not prove its case through the report. Both officers presented detailed testimony on the events they observed. To the extent their testimony reflected the contents of the report, the report could be seen as cumulative to the testimony. *See State v. Dendak*, 5th Dist. No. 2013 CA 00065, 2013-Ohio-5694, ¶ 25 (finding admission of a police report harmless where it was cumulative to testimony of officers and other witnesses and finding counsel may have had strategic reason for not objecting to admission of report). Although Appellant generally argues the result of the trial would have been different without the admission of the report, he does not specify what information in the report justifies his conclusion.

**{¶71}** Even if a deficiency in performance was perceived, our confidence in the outcome is not undermined. Prejudice requires more than a showing that the error had "some conceivable effect on the outcome of the proceeding." *Bradley*, 42 Ohio St.3d at fn. 1, quoting *Strickland*, 466 U.S. at 693. Under the totality of the circumstances, admission of the report does not render the results unreliable or the proceeding fundamentally unfair. *See Carter*, 72 Ohio St.3d at 558, citing *Lockhart*, 506 U.S. at 369. This assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER THREE</u>

**{¶72}** Appellant's final assignment of error provides:

"THE TRIAL COURT ERRED WHEN IT IMPOSED SENTENCE WITHOUT AFFORDING DEFENSE COUNSEL OR APPELLANT THE OPPORTUNITY TO SPEAK."

**{¶73}** Appellant argues the trial court violated Crim.R. 32(A)(1). He notes the court called the case and then immediately announced the sentence. The court did not provide counsel an opportunity to speak before pronouncing sentence and did not address Appellant personally and offer him his right to allocution. Appellant points out that he was sentenced to the maximum jail term for a second-degree misdemeanor even though he had no criminal record. The state concedes Appellant was denied his right of allocution. The state also agrees the case must be remanded for a new sentencing hearing.

**{¶74}** Crim.R. 32(A)(1) provides: "At the time of imposing sentence, the court shall * * * Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." This inquiry "is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 359-360, 738 N.E.2d 1208 (2000). "There is no exception to the defendant's right to allocution in misdemeanor cases." *State v. Price*, 7th Dist. No. 14 MA 28, 2015-Ohio-1199, ¶ 32, citing *State v. Wallace*, 7th Dist. No. 12 MA 180, 2013-Ohio-2871, ¶ 8.

**{¶75}** The trial court has the affirmative obligation to personally ask the defendant if he wishes to exercise his allocution right. *See Green*, 90 Ohio St.3d at 359; *State v. Campbell*, 90 Ohio St.3d 320, 324-325, 738 N.E.2d 1178 (2000). *See also Green v. United States*, 365 U.S. 301, 305, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) ("Hereafter trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing."). As a result, the right is not waived by a mere lack of objection. *Campbell*, 90 Ohio St.3d 324. A violation of Crim.R. 32(A)(1) can be subject to the doctrine of invited error and the doctrine of harmless error. *Id.* at 325-326.

**{¶76}** In the case at bar, the court ordered a presentence investigation after the jury verdict was entered on May 15, 2014. The case was called for sentencing on November 5, 2014. The sentencing transcript begins with the court saying, "Albright. Mr. Albright, please come up here. Rose, I want this typed on this too." The court then recited: the case name and number; the fact and date of the jury's guilty verdict; the name, degree, and statutory section of the offense; and the name of defense counsel. Without providing the defense attorney, the defendant, or the prosecuting attorney[6] an opportunity to speak, the court pronounced: "The defendant is hereby sentenced to 90 days in the Mahoning County Jail and fined $750 plus court costs. Jail is to commence on the 5th day of January 2015." (Sent. Tr. 2).

---

[6] We note that Crim.R. 32(A)(2) also instructs the sentencing court to afford the prosecuting attorney an opportunity to speak at sentencing.

**{¶77}** The court mentioned the delayed report date provided counsel time to engage in "anything you're going to do * * *." (Sent. Tr. 2). Counsel responded he would reserve his arguments for appeal. As to sentencing, counsel stated: "However, for purposes of the record, with all due respect to the court's sentencing, I think it has overlooked the defendant's record, lack of record; his acceptance of responsibility in this matter whereby there was never any dispute as to whether we would plead to the obstructing." (Sent.Tr. 3).

**{¶78}** The court mentioned the probation department's recommendation in the presentence investigation that Appellant be sentenced to 90 days in jail. (Sent.Tr. 3). Defense counsel opined the probation department's recommendation was the result of "recommendation and the feeling of the officer involved." He urged the court to consider the officer's sentencing position as just one component in the decision. When counsel referred to his client accepting responsibility, the judge interrupted: "I didn't hear your client accept responsibility of anything." Counsel replied, "We're here for sentencing for the first time." (Sent.Tr. 4).

**{¶79}** Finally, counsel noted Appellant had been on bail for 16 months without incident and concluded: "For all of those reasons, Your Honor, I think that the court should reconsider its sentence and offer this individual a community control sanction." (Sent.Tr. 5). The court refused this request.

**{¶80}** Clearly, defense counsel was not afforded the opportunity to speak prior to the imposition of sentence. When counsel was able to speak, he found himself arguing against a sentence the court already announced rather than arguing against a recommendation of the victim as expressed in the presentence investigation. Notably, when counsel said his client accepted responsibility for the obstruction charge, the judge responded that he never heard the defendant accept responsibility. Appellant made no statements at the hearing.

**{¶81}** The court imposed sentence immediately after calling the case, instructing court personnel to type his statements elsewhere as well (presumably for

the sentencing entry).[7]  Even if the preemptive sentence issue could be considered harmless by itself, this is not the only issue here.

**{¶82}** The trial court failed to personally ask Appellant if he wished to make a statement on his own behalf or present any information in mitigation of punishment. This did not occur before or after the imposition of sentence.  As Appellant did not speak, the court did not have his statements to review in making a decision to deny counsel's request for the court to "reconsider" the sentence it orally imposed. *Compare Fry*, 125 Ohio St.3d 163 at ¶ 192.

**{¶83}** In conclusion, the error was not invited nor was it harmless.  It is difficult to conclude the defendant was not prejudiced by being deprived of his allocution right, considering the totality of the circumstances at the sentencing hearing in conjunction with the state's concession that the case should be remanded for resentencing. In accordance, this assignment of error has merit.

**{¶84}** For the foregoing reasons, Appellant's conviction is affirmed, the sentence is reversed, and the case is remanded for resentencing.


Waite, J., concurs.

DeGenaro, J., concurs.

---

[7] We recognize the Supreme Court found harmless error where a judge filed a capital sentencing entry prior to the sentencing hearing.  *State v. Fry*, 125 Ohio St.3d 163, 195, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 186-193, citing *State v. Reynolds*, 80 Ohio St.3d 670, 684, 687 N.E.2d 1358 (1998) (finding an allocution omission to be harmless error in a capital case where defense counsel made a statement to the judge on the defendant's behalf and the defendant made an unsworn statement to the jury in the penalty phase and sent a letter to the judge).  Although it was violative of Crim.R. 32(A) to file the sentencing entry prior to providing counsel and the defendant the right to speak at sentencing, the Court believed the error was harmless because the trial court could have modified its entry after hearing them speak.  *Fry*, 125 Ohio St.3d 163 at ¶ 192-193.

In that case, counsel was afforded the opportunity to speak at the sentencing hearing, the court personally invited the defendant to speak at sentencing, and the defendant did speak (providing the court the ability to review the contents of the defendant's plea for leniency).  *Id.* at ¶ 188, 192.  (We also note that a judge presiding over a capital case hears mitigation evidence prior to the sentencing hearing.)  Here, the defendant did not speak and was never invited to speak