[Cite as *State v. Desarro*, 2020-Ohio-6815.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOSEPH DESARRO, II,

Defendant-Appellant.

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 CO 0042**

Criminal Appeal from the
East Liverpool Municipal Court of Columbiana County, Ohio
Case No. 19CRB539

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

**JUDGMENT:**
Reversed and Remanded

*Atty. Robert Herron*, Prosecutor and *Atty. Don Humphrey Jr.,* Assistant Prosecutor, Columbiana County Courthouse, 105 South Market Street, 3rd Floor, Lisbon, Ohio 44432, for Plaintiff-Appellee and

*Atty. Charles Amato*, Amato Law Office, L.P.A., 420 Broadway Avenue, Wellsville, Ohio 43968, and *Atty. Joseph Phillips,* Phillips Law, 1719 Crooks Road, Suite 4, Royal Oak, Michigan 48067, for Defendant-Appellant.

Dated:
December 16, 2020

---

**Donofrio, J.**

{¶1}    Defendant-appellant, Joseph DeSarro, II, appeals from an East Liverpool Municipal Court judgment denying his motion to suppress evidence.

{¶2}    On March 29, 2019, East Liverpool Police Department Patrolman Christopher Green decided to conduct surveillance on a property (904 Avondale) due to his allegations that the department had received numerous complaints of drug activity at the location.

{¶3}    Upon arrival at the property, Ptl. Green and his partner parked their cruiser directly behind 904 Avondale.  (Tr. 9).  Ptl. Green then walked through the backyard of the property, noticing a door and a window located on the south side of the property.  (Tr. 9).  The window was partially obstructed by the kitchen refrigerator and a curtain.  (Tr. 13).  Ptl. Green began conducting surveillance through the window, between the obstruction of the refrigerator and the curtain.  (Tr. 13).  Ptl. Green observed two male individuals, one of which was appellant, inside of the residence.  (Tr. 13).  Ptl. Green noticed appellant brushing his teeth and saw a firearm in the waistband of appellant's pants.  (Tr. 58).  At this point, Ptl. Green decided to pull out his cellphone and videotape what he was observing.  (Tr. 59).  Ptl. Green then called for backup, which arrived and surrounded the property.  (Tr. 37).

{¶4}    Through dispatch, Ptl. Green learned that appellant was a convicted felon. (Tr. 37).  Ptl. Green and the other officers at the scene attempted to make contact with the individuals inside of the residence by knocking on the front and side doors and were denied entry into the home.  (Tr. 17).  Appellant denied any wrongdoing and said he would not open the door.  (Tr. 17).  At this point appellant was running from window to window of the home, in a taunting manner, continuously telling officers that there was nothing illegal going on and that they could not come in.  (Tr. 18).  This went on for several minutes.  (Tr. 18).  After they were denied entry, they contacted the Columbiana County

Case No. 19 CO 0042

Prosecutor's Office regarding the situation. (Tr. 19). No prosecutor was available at the time. (Tr. 19). At this point, the officers forced their way into the home by kicking down the door and they placed both individuals under arrest. (Tr. 19). Ptl. Green searched appellant's person and discovered marijuana and brass knuckles. (Tr. 20). The officers on the scene then obtained a search warrant and searched the entire residence. (Tr. 20).

**{¶5}** Appellant was then arrested and charged with obstructing official business, in violation of R.C. 2921.31 and possession of marijuana, in violation of City of East Liverpool Ordinance 513.03.

**{¶6}** On April 1, 2019, appellant pleaded not guilty to both charges and subsequently filed a motion to suppress evidence. After briefing from both sides, and a suppression hearing, the trial court denied the motion to suppress on September 3, 2019. On October 2, 2019, appellant pleaded no contest to the charges and was sentenced that same day to 30 days in jail and a driver's license suspension of 180 days. Appellant timely filed his notice of appeal on October 11, 2019.

**{¶7}** Appellant now raises a single assignment of error. His assignment of error states:

THE TRIAL COURT ABUSED IT'S[sic] DISCRETION BY DENYING APPELLANT'S JUNE 13, 2019 MOTION TO SUPPRESS EVIDENCE.

**{¶8}** Here, appellant argues that his constitutional rights were violated by the search and seizure of evidence. He argues that there were no exigent circumstances that would have permitted the search and seizure. He posits that due to the unconstitutional search the trial court should have granted his motion to suppress. Plaintiff-appellee, the State of Ohio, argues the opposite. The state believes that due to the weapon seen an exigent circumstance existed to authorize the search and seizure.

**{¶9}** Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th Dist.1996), citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 802 (9th Dist.1994). Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to

resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice*, 129 Ohio App.3d 91, 94, 717 N.E.2d 351 (7th Dist.1998). A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. *Id.* In addition, this court is to decide whether exigent circumstances existed on a case by case basis. *State v. DeFiore*, 64 Ohio App.2d 115, 119, 411 N.E.2d 837 (1979).

{¶10} Here, the evidence that the trial court used to determine that exigent circumstances existed was the gun in appellant's possession. The evidence was not competent and credible for two reasons. First, the officer had no reason to be on the curtilage. The officers were walking around the property peering in windows without exigent circumstances. Second, the officers were only aware that the appellant was a convicted felon, not that appellant was a felon under disability.

{¶11} The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶12} The modern theory of search and seizure law is that the Fourth Amendment serves to protect the individual's subjective expectation of privacy that society is prepared to accept as "reasonable." *Rakas v. Illinois*, 439 U.S. 128, 143–144, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Katz v. United States*, 389 U.S. 347, 360–361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), (Harlan, J., concurring). One implication of this theory is that law enforcement officers do not infringe upon any constitutionally protected interest when they intrude upon a place where an individual does not have a reasonable expectation of privacy. In those situations, it is said that no "search" has occurred within the meaning of the Fourth Amendment, and evidence obtained thereafter need not be suppressed. See *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983).

{¶13} "[T]he application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). The United States Supreme Court has subsequently adopted the test of justifiable expectation of privacy set forth in Justice Harlan's concurrence in Katz. *See Smith*, supra; *Hudson v. Palmer*, 468 U.S. 517, 525, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

{¶14} The *Katz* analysis consists of two separate inquiries. The first is whether the individual, by his conduct, has exhibited an actual, subjective expectation of privacy. *Katz*, 389 U.S. at 361. In the words of the *Katz* majority, the individual must show that he "seeks to preserve [something] as private." *Id*. at 351. The second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as "reasonable" or is "'justifiable' under the circumstances." *Smith v. Maryland*, supra.

{¶15} Here, appellant had an actual, subjective expectation of privacy that society recognizes as reasonable. Curtilage is the area "to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), quoting *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886). It is the area "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

{¶16} The following factors are "useful analytical tools" to assist in determining whether a certain space is considered part of the home's curtilage: (1) the proximity of the area to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken to protect the area from observation by passersby. *Id*. It has been stated that the boundaries of curtilage are generally clearly marked. *Florida v. Jardines*, 569 U.S. 1, 7, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013).

{¶17} Here, the area in question was immediately adjacent to the home and appellant took actual steps to protect the area from observation by passersby. The

Case No. 19 CO 0042

curtains and refrigerator were placed in a way to prevent others from peering into the home. The area outside the home, next to the window was therefore curtilage for purposes of the Fourth Amendment analysis. But even if an area is curtilage, it does not render the officer's presence per se invalid. *State v. Albright*, 7th Dist. Mahoning No. 14-MA-0165, 2016-Ohio-7037, ¶ 28.

**{¶18}** "A police officer conducting an investigation may enter the areas of the curtilage which are impliedly open to use by the public." *Id*. citing *Jardines* at 6-7. Here, the area was no more open to the public than if a "Peeping Tom" were pressing their nose against the window. The officer had no reason to be so close to the house without a warrant and in doing so invaded appellant's reasonable expectation of privacy.

**{¶19}** In comparison, appellant points this court to a Sixth Circuit decision that held that no exigent circumstances existed when the police noted the mere presence of a gun in a house without "any threats from the defendant or information on the defendant's criminal history or reputation for violence." *United States v. Bates*, 84 F.3d 790, 796 (6h Cir. 1996).

**{¶20}** In *Bates*, the appellant challenged a no-knock entry by claiming that no exigent circumstances existed to justify the entry. In *Bates*, the officers were conducting video surveillance and observed the appellant carrying a large cardboard box, which the officers suspected contained cocaine. *Id*. at 792. Boddie, an informant, had told the officers that the boxes contained cocaine and that he had seen a firearm in the apartment. *Id*. Based upon this information the officers conducted a no-knock entry to the premises, some entering through breaking down the front door, others entering by climbing up a ladder to the back window. *Id*. at 793. After entering, officers located cocaine and a firearm. *Id*.

**{¶21}** The case at hand is quite similar. The officers in the present case also had no indication of appellant's propensity for violence or any indication that appellant was going to use the firearm in an offending manner. The officers had no indication that appellant was a felon under disability, only that he was a felon. Not all felonies carry with them a disability. See R.C. 2923.13(A)(2)(3). The code specifically sets out that the disability only applies to felonies of violence or drug offenses. R.C. 2923.13(A)(2)(3). Without further information, the officers could not have been aware of what specific

felonies appellant was convicted of. In other words, the officers could not tell, simply by looking at appellant, whether he was a violent offender or had convictions for drug crimes. Individuals are allowed to possess firearms within their own home, even while brushing their teeth. This defeats the state's argument that exigent circumstances existed.

**{¶22}** Because the officers were not faced with exigent circumstances, they had no basis on which to enter the home. In addition, the officers had no indication that appellant was a felon under disability, only that he was a felon. Based on the foregoing, the trial court should have granted appellant's motion to suppress.

**{¶23}** Accordingly, appellant's sole assignment of error has merit and is sustained.

**{¶24}** For the reasons stated above, the trial court's judgment is hereby reversed. The matter is remanded to the trial court with instructions to grant the motion to suppress and for further proceedings pursuant to law and consistent with this opinion.

Robb, J., concurs.
D'Apolito, J., concurs.

Case No. 19 CO 0042

                       ————————————

For the reasons stated in the Opinion rendered herein, the sole assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the East Liverpool Municipal Court of Columbiana County, Ohio, is reversed. We hereby remand this matter to the trial court with instructions to grant the motion to suppress and for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**