[Cite as *State v. Osting*, 2019-Ohio-1278.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

STATE OF OHIO,

 PLAINTIFF-APPELLEE,     CASE NO. 4-18-09

 v.

LINDA S. OSTING,       O P I N I O N

 DEFENDANT-APPELLANT.

Appeal from Defiance County Common Pleas Court
Trial Court No. 17 CR 13010

Judgment Affirmed

Date of Decision: April 8, 2019

APPEARANCES:

 *Clayton J. Crates* for Appellant

 *Russell R. Herman* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Linda S. Osting ("Osting"), appeals the July 20, 2018 judgment of sentence of the Defiance County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case arises from a December 11, 2017 incident in which Osting shot her husband, Mitchell Osting ("Mitchell"), following an argument. As a result of the gun shot, Mitchell sustained injuries requiring extended hospitalization, multiple surgeries, and ongoing medical treatment.

{¶3} On January 26, 2018, the Defiance County Grand Jury indicted Osting on two counts: Count One of attempted aggravated murder in violation of R.C. 2903.01(A) and 2923.02(A), (E)(1) and Count Two of felonious assault in violation of R.C. 2903.11(A)(2), (D)(1)(a), a second-degree felony. (Doc. No. 2). Counts One and Two each contained a three-year mandatory firearm specification under R.C. 2941.145(A). (*Id.*). On February 8, 2018, Osting appeared for arraignment and entered pleas of not guilty to the counts and specifications in the indictment. (Doc. No. 12).

{¶4} On June 4, 2018, under a negotiated plea agreement, Osting withdrew her not guilty pleas and pleaded guilty to Count Two and the associated firearm specification. (Doc. No. 21). In exchange, the State agreed to recommend dismissal of Count One and its associated firearm specification. (*Id.*). Thereafter, the trial

court accepted Osting's guilty pleas, found her guilty as to Count Two and its associated firearm specification, and ordered a presentence investigation ("PSI"). (*Id.*). The trial court filed its judgment entry of conviction on June 11, 2018. (*Id.*). On September 17, 2018, the trial court dismissed Count One of the indictment and its accompanying firearm specification. (Doc. No. 34).

{¶5} On July 20, 2018, the trial court sentenced Osting to 8 years in prison on Count Two and 3 years in prison for the firearm specification to be served consecutively for an aggregate term of 11 years in prison. (*See* Doc. No. 23); (*See* July 20, 2018 Tr. at 103).

{¶6} Osting filed her notice of appeal on August 16, 2018. (Doc. No. 26). She raises three assignments of error.

## Assignment of Error No. I

**The trial court committed prejudicial error by imposing a maximum sentence.**

{¶7} In her first assignment of error, Osting argues that the trial court erred by imposing the maximum term of imprisonment. In particular, she contends that the trial court failed to properly consider the R.C. 2929.12(C) and (E) felony-sentencing factors.

{¶8} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is

otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶9}** "It is well-established that the statutes governing felony sentencing no longer require the trial court to make certain findings before imposing a maximum sentence." *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 29, citing *State v. Dixon*, 2d Dist. Clark No. 2015-CA-67, 2016-Ohio-2882, ¶ 14 ("Unlike consecutive sentences, the trial court was not required to make any particular 'findings' to justify maximum prison sentences.") and *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 9 ("The law no longer requires the trial court to make certain findings before imposing a maximum sentence."). Rather, "'[t]rial courts have full discretion to impose any sentence within the statutory range.'" *State v. Smith*, 3d Dist. Seneca No. 13-15-17, 2015-Ohio-4225, ¶ 9, quoting *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 9, citing *State v. Saldana*, 3d Dist. Putnam No. 12-12-09, 2013-Ohio-1122, ¶ 20. In this case, as a second-degree felony, felonious assault carries a non-mandatory sanction of two to eight years' imprisonment. R.C. 2903.11(A)(2), (D)(1)(a) (Oct. 17, 2017) (current version at R.C. 2903.11(A)(2), (D)(1)(a) (Mar. 22, 2019)); R.C.

2929.14(A)(2) (Oct. 17, 2017) (current version at R.C. 2929.14(A)(2) (Mar. 22, 2019)). The firearm specification under Count Two carries a mandatory three-year prison term. R.C. 2941.145. Because the trial court sentenced Osting to 8 years in prison on Count Two and 3 years in prison on the firearm specification for an aggregate of 11 years in prison, Osting's sentence falls within the statutory range. "[A] sentence imposed within the statutory range is 'presumptively valid' if the [trial] court considered applicable sentencing factors." *Maggette* at ¶ 31, quoting *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15.

{¶10} "R.C. 2929.11 provides, in pertinent part, that the 'overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender.'" *Smith* at ¶ 10, quoting R.C. 2929.11(A) (Sept. 30, 2011) (current version at R.C. 2929.11(A) (Oct. 29, 2018)). "In advancing these purposes, sentencing courts are instructed to 'consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.'" *Id.*, quoting R.C. 2929.11(A) (Sept. 30, 2011) (current version at R.C. 2929.11(A) (Oct. 29, 2018)). "Meanwhile, R.C. 2929.11(B) states that felony sentences must be 'commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim' and also be consistent with sentences imposed in similar cases." *Id.*, quoting R.C. 2929.11(B) (Sept. 30, 2011) (current version at

R.C. 2929.11(B) (Oct. 29, 2018)). "In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism." *Id.*, citing R.C. 2929.12(A). "'A sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2929.12.'" *Id.* at ¶ 15, quoting *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, ¶ 18 (6th Dist.), citing *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000).

{¶11} "Although the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12, the sentencing court is not required to 'state on the record that it considered the statutory criteria or discuss[ed] them.'" *Maggette* at ¶ 32, quoting *State v. Polick*, 101 Ohio App.3d 428, 431 (4th Dist.1995). "'A trial court's statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes.'" *Id.*, citing *State v. Abrams*, 8th Dist. Cuyahoga No. 103786, 2016-Ohio-4570, ¶ 14, quoting *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 18.

{¶12} Here, the record indicates that the trial court properly considered the purposes of felony sentencing under R.C. 2929.11(A) and the R.C. 2929.12(B)-(F) felony-sentencing factors. In its judgment entry of sentence, the trial court stated that it based its sentence "upon consideration of the statutory sentencing factors."

(Doc. No. 23). Therefore, the record reflects that the trial court referenced the appropriate statutory factors in determining Osting's sentence.

{¶13} Nevertheless, Osting argues that the trial court failed to properly consider the statutory factors contained in R.C. 2929.12(C) and (E).

{¶14} With regard to R.C. 2929.12(C), Osting specifically contends that the trial court failed to properly consider the factors under R.C. 2929.12(C)(1), (2), and (4) which indicate that "the offender's conduct is less serious than conduct normally constituting the offense." (Appellant's Brief at 8). In support of her contention that her conduct is less serious than conduct normally constituting the offense, Osting argues that she and her three witnesses testified that she was the victim of "physical, mental, and emotional abuse" and "controlling behavior" by Mitchell. (*Id.*). Osting also points to her long-standing addiction to pain medication and argues that Mitchell provided her with pain medication so that he could engage in extramarital affairs. (*Id.* at 8-9).

{¶15} However, the record reflects that the trial court considered the nature of Osting and Mitchell's relationship and Osting's addiction to pain medication when sentencing Osting. Immediately before pronouncing Osting's sentence, the trial court stated that it had reviewed the record available to the trial court and that it was "clear" that Osting has "significant substance abuse problems" which "long pre-date her relationship with [Mitchell]." (July 19, 2018 Tr. at 100). The trial court

also acknowledged that "[Osting] is probably suffering mental effects from long[-]term drug abuse" and may have difficulty "perceiving reality." (*Id.* at 101). The trial court pointed to Osting's long-standing substance abuse when assessing her credibility and determined that Osting was "certainly trying to spin the situation to avoid responsibility for what she did" but, due to her long-standing substance abuse, she was not very convincing "because a lot of what she [said did not] make sense, and [was], in essence contradicted by [Osting's] later emotional testimony regarding her frustration with [Mitchell's] alleged extra-marital activity * * *." (*Id.*)

{¶16} In support of its contention that Osting's testimony was not credible, the trial court pointed to the inconsistency between her testimony that Mitchell is an abusive bully who poses a physical danger to her and her testimony that Mitchell "insisted" that she have a loaded firearm available for self-defense at all times. (*Id.* at 83-84, 102).

{¶17} Furthermore, the trial court addressed additional considerations in its assessment that Osting's conduct was "among the worst forms of the offense of [f]elonious assault" as "the circumstances suggest * * * that [Osting] knew she was going to [shoot Mitchell] [and] that she had the gun ready at hand to accomplish [it]." (*Id.* at 102).

{¶18} Moreover, the trial court considered the life-threatening and ongoing injuries Mitchell sustained as a result of the incident. Mitchell and his brother,

Clayton Osting, gave undisputed testimony that Mitchell sustained life-threatening and ongoing injuries as a result of the incident. At the time of the sentencing hearing, more than seven months had passed since the incident, and in addition to the three surgeries Mitchell had already undergone, he still required at least one more surgery with an expected recovery time exceeding two months. (*Id.* at 7-8, 10-11). Mitchell also testified to his ongoing medical and financial issues resulting from the incident and stated that due to the extent of his injuries he will likely not be able to return to work for at least a year or a year and a half. (*Id.* at 7-8). The trial court addressed the extent of Mitchell's injuries at the sentencing hearing and stated that "certain things are pretty clear" including the fact that "[Osting] shot him" and "very nearly killed him." (*Id.* at 100).

{¶19} Thus, the trial court did consider Osting's testimony regarding the nature of her relationship with Mitchell and her addiction to prescription medication. However, the trial court did not find Osting's testimony to be credible and it found that the other factors, such as the extent of the physical harm to the victim, outweighed Osting's arguments related to her substance addiction and her relationship with Mitchell.

{¶20} Osting also argues that the trial court failed to consider mitigating factors under R.C. 2929.12(E) indicating that "the offender is not likely to commit future crimes." (Appellant's Brief at 9). In support of her contention, Osting asserts

that prior to committing the offense, she had led a law-abiding life and had a limited criminal history. (*Id.*). Osting also argues that the "offense was committed under circumstances not likely to recur" as the offense occurred after Osting "had been subjected to years of abuse, was under the influence of pain medication, had access to a firearm, was being attacked, and feared for her life." (*Id.* at 10). Additionally, Osting asserts that she demonstrated remorse for her conduct by admitting to the trial court that she shot Mitchell and by her statement to the trial court, "'I just wanted to stop him. Stop him from doing all the stuff that he was doing, because I loved him I wanted him to stop running around on me.'" (*Id.*, quoting July 19, 2018 Tr. at 82).

**{¶21}** However, the record reflects that the trial court considered the factors identified by Osting, but found that they were outweighed by the aggravating factors. As discussed above, the trial court did not find Osting to be a credible witness and was skeptical of her characterization of her relationship with Mitchell and her motives for her actions.

**{¶22}** In contrast to Osting's characterization of the events as occurring under "circumstances not likely to recur" because the offense occurred after Osting "had been subjected to years of abuse, was under the influence of pain medication, had access to a firearm, was being attacked, and feared for her life," the trial court, after a review of the record, found that "[t]he circumstances suggest that it was not

a sudden fit, * * * she knew she was going to do this, [and] that she had the gun ready at hand to accomplish this." (July 19, 2018 Tr. at 102). Thus, the trial court indicated that it had considered the circumstances surrounding the incident, but found Osting's testimony regarding her version of events not to be credible.

{¶23} Osting also asserts that she expressed remorse by admitting that she shot Mitchell and explaining her actions to the trial court as a desperate attempt to stop Mitchell from engaging in extramarital affairs. (Appellant's Brief at 10). However, in contrast to Osting's statement of remorse, the PSI writer noted that "at the end of the interview, somewhat 'under her breath' * * * [Osting stated] she is not remorseful because [she was] getting punished." (PSI at 4). Thus, the record supports the trial court's statement that Osting is "certainly trying to spin the situation to avoid responsibility for what she did." (July 19, 2018 Tr. at 101).

{¶24} Finally, as noted by the trial court at the sentencing hearing and in its judgment entry of sentence, Osting's plea was made pursuant to a negotiated plea agreement in which the State agreed to recommend dismissal of the attempted aggravated murder charge in exchange for Osting entering a guilty plea to the felonious assault charge. (*Id.*); (Doc. No. 23). Although the trial court's belief that a defendant committed dismissed charges cannot be the sole reason for imposition of a maximum sentence, the trial court can consider dismissed charges when determining an offender's likelihood to recidivate. *State v. Park*, 3d Dist. Crawford

No. 3-06-14, 2007-Ohio-1084, ¶ 7, quoting *State v. Blake*, 3d Dist. Union No. 14-03-33, 2004-Ohio-1952, ¶ 6.

{¶25} Here, the record is clear that the trial court did not base its maximum sentence solely on the belief that Osting had committed the dismissed charges. The trial court also considered the circumstances surrounding the incident, the severity of the injury to the victim, and Osting's inconsistent testimony when imposing the maximum sentence.

{¶26} Accordingly, we will not reverse Osting's sentence because it is within the permissible statutory range, the trial court properly considered the criteria found in R.C. 2929.11 and 2929.12, and there is not clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that Osting's sentence is otherwise contrary to law. *See Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, at ¶ 1.

{¶27} Osting's first assignment of error is overruled.

**Assignment of Error No. II**

**The trial court committed prejudicial error by failing to make findings pursuant to R.C. §2951.03(B)(5).**

{¶28} In her second assignment of error, Osting argues that the trial court committed prejudicial error by failing to make findings under R.C. 2951.03(B)(5) when Osting denied the accuracy of a statement allegedly contained in the PSI.

{¶29} PSIs are governed by R.C. 2951.03. R.C. 2951.03 addresses the procedure for handling alleged inaccuracies in PSIs and states as follows:

If the comments of the defendant or the defendant's counsel, the testimony they introduce, or any of the other information they introduce alleges any factual inaccuracy in the presentence investigation report or the summary of the report, the court shall do either of the following with respect to each alleged factual inaccuracy:

(a)   Make a finding as to the allegation;

(b)   Make a determination that no finding is necessary with respect to the allegation, because the factual matter will not be taken into account in the sentencing of the defendant.

R.C. 2951.03(B)(5).

{¶30} During the sentencing hearing, the following exchange took place:

[Trial Court]:   Did you tell the lady you were in jail with that, if I get out I'll make sure I finish the job?

[Osting]:   I've never wanted to finish the job with Mitch. The only job that I ever wanted to finish was finishing it with myself. Because I had already tried to kill myself once before with him, and was in the Toledo

|  | Hospital for an overdose. The only one I wanted to finish off was me. |
|---|---|
| [Trial Court]: | * * * What concerns me is that she stated on several occasions that she hates her husband and it was, quote, bad luck, end quote, that he lived. And when and if she gets out, I quote, she will, quote make sure that she finishes the job, end quote. |
| [Osting]: | That is absolutely not true. I love Mitch even now. I still love him. And I did not want to kill him ever. I just wanted him to stop doing what he was doing. That's it. |

(July 19, 2018 Tr. at 87-88).

**{¶31}** Osting asserts that the statement regarding "finishing the job" was contained in the PSI and that she challenged the factual accuracy of the statement in the conversation with the trial court quoted above. (Appellant's Brief at 11). Osting argues that as a result of her challenge to the factual accuracy of the statement allegedly contained in the PSI, the trial court was required under R.C. 2951.03(B)(5) to make a finding regarding the allegation or a determination that making a finding is not necessary because the factual matter will not be taken into account in sentencing. (*Id.* at 12).

{¶32} However, upon review of the full PSI and the summary PSI documents, this court finds no reference to the statement at issue in either document. As the statement was not part of the PSI, the trial court was not required to make any findings or determinations as to the allegation under R.C. 2951.03(B)(5).

{¶33} Accordingly, Osting's second assignment of error is overruled.

### Assignment of Error No. III

**The trial court committed prejudicial error by sentencing appellant with an incomplete presentence investigation report.**

{¶34} In her third assignment of error, Osting argues that the trial court committed prejudicial error by sentencing her with an incomplete PSI. Specifically, Osting argues that the trial court erred in proceeding with sentencing because she raised concerns regarding the completeness of the PSI.

{¶35} R.C. 2929.19(B)(1) states, in pertinent part, that "[a]t the sentencing hearing, the court, before imposing sentence, shall consider the record, * * * the presentence investigation report * * *, and any victim impact statement * * *."

{¶36} In support of her argument, Osting relies on *State v. Shiffler*, 147 Ohio App.3d 340, 2002-Ohio-122 (6th Dist.). In that case, Shiffler was indicted on and convicted of two counts of rape and one count of gross sexual imposition. 147 Ohio App.3d 340, 2002-Ohio-122, ¶ 2. For these offenses, he was sentenced to three three-year concurrent terms of imprisonment. *Id.* The State then appealed the trial court's sentence arguing that because Shiffler's "sentence was based on an

erroneous reading of [his] sealed presentence investigation report," his sentence was contrary to law and unsupported by the record. *Id.* at ¶ 3, 7. In reversing the trial court's sentence, the appellate court noted that Shiffler's PSI contained two distinct sentencing recommendations: one for Shiffler's two rape convictions and one for his gross-sexual-imposition conviction. *Id.* at ¶ 9-11. However, at his sentencing hearing, the trial court told Shiffler that "'[f]or all of these cases, [it was] accepting the recommendation of the officer who interviewed [him] for the three years of incarceration.'" *Id.* at ¶ 10. The appellate court concluded that "[b]ased on the [trial] judge's comments, * * * the judge believed there to be only one sentencing recommendation for all three offenses." *Id.* at ¶ 11. The appellate court ultimately remanded the case for resentencing because "[a] sentence resulting from only a partial review of the presentence report does not achieve the overriding purposes of felony sentencing * * * ." *Id.*

{¶37} *Shiffler* is readily distinguishable from the present case. In *Shiffler*, the appellate court reversed because it was "concern[ed] * * * that the trial judge did not consider the entire record before imposing a felony sentence." *Id.* at ¶ 12. Here, Osting does not contend that the trial court only partially considered her PSI, and there is no indication in the record that the trial court failed to consider any portion of her PSI. Instead, Osting argues that the trial court erred by relying on her PSI to determine her sentence because her PSI was only partially completed. Thus,

Osting does not argue that the trial court failed to consider the complete record; rather, she suggests that the record itself was not complete. Accordingly, *Shiffler* does not control our resolution of her assignment of error.

{¶38} We find no merit to Osting's argument that the trial court erred by relying on her PSI to determine her sentence because her PSI was only partially completed. At the beginning of the sentencing hearing, before the victim or Osting gave any statement or testimony to the trial court, the trial court addressed the officer of the ISP Unit present in the courtroom, who handled the completion of Osting's PSI, and stated, "I have the pre-sentence [report] prepared by your office[.] [I]t appears to be complete. Anything else I need to know about?" (July 19, 2018 Tr. at 6). The officer of the ISP Unit replied, "No, Your Honor." (*Id.*). Thus, Osting and her trial counsel were on notice that the trial court had reviewed the PSI and considered it complete. Yet, neither Osting nor her trial counsel raised a concern regarding the completeness of the PSI at that time. (*See id.*).

{¶39} In fact, no mention of the PSI was made by Osting or her trial counsel until the very end of the sentencing hearing, immediately before the pronouncement of sentence. (*See id.* at 99-100). During the State's final comments, the State referenced the PSI, which prompted the following interaction:

[The State]: But [Osting's] demeanor on the stand, her comments about [Mitchell] having affairs, the

-17-

physical evidence from the scene, some of the history, much of which is described in the pre-sentence report and from interviews that she gave, which today are different than what she told the PSI writer, so all things considered, her credibility, obviously, we believe should be questioned, and we would just ask the Court to impose the sentence that we had recommended.

[Defense Counsel]: Your Honor, [Osting is] asking if she could address the Court one final time.

[Trial Court]: Sure.

[Osting]: With regard to that PSI, Your Honor. I wasn't sure how I filled it out, * * * I didn't even know I was doing the PSI that day. I didn't have my glasses on, so I used a pair of glasses that they had at the Sheriff's Department. I wasn't even sure. I didn't even get all the pages filled out. I'm not even positive on how I filled it out. I tried to get a message back to [trial counsel] that I didn't have it completed and maybe needed to

go over it. But, * * * [because] I didn't like the way I filled it out I wasn't sure I read the questions right[.] I was really nervous because I was in the holding cell with shackles on trying to fill this thing out with glasses * * * that didn't even stay on my head, and I never even got the thing filled out.

[Trial Court]: The process includes not only the paperwork you fill out, but there was in fact an interview * * *.

[Osting]: That * * * I feel didn't get finished either.

[Trial Court]: Well you spoke with her, you talked to her.

[Osting]: I know I did[,] but we ran out of time.

(*Id.* at 98-100).

{¶40} We find that the trial court did not err in sentencing Osting using the PSI. As discussed above, Osting did not inform the trial court of any concerns regarding the manner in which the PSI was generated or the contents of the PSI until after the trial court had heard from witnesses from each side, the victim, Osting, the State, and Osting's trial counsel. Additionally, although Osting claims that the PSI is incomplete, she fails to assert any additional fact or circumstance that was not included in the PSI. Moreover, a review of the full PSI and the summary PSI

provides no indication that the PSI was incomplete. In fact, the full PSI includes a lengthy and detailed statement written by Osting in which she details her version of the events of December 11, 2017, her reasons for her actions, and her perception of the nature of her relationship with Mitchell. (PSI at 3-4). Additionally, each section of the PSI appears to be complete. Moreover, the trial court is in a better position to assess whether Osting's PSI contained any irregularities, as the trial court has likely reviewed many PSIs generated by the same agency.

{¶41} Thus, given the totality of the circumstances, it was reasonable for the trial court to interpret Osting's statements as an explanation or a desire for a "do-over" and proceed to sentence her utilizing the PSI available to the trial court. Therefore, the trial court did not err by sentencing Osting with the information provided in the PSI.

{¶42} Osting's third assignment of error is overruled.

{¶43} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**