[Cite as *State v. Smith*, 2020-Ohio-760.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

CORY JULIUS SMITH,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 BE 0013**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 17 CR 209

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Dan Fry*, Belmont County Prosecutor, 147-A West Main Street, St. Clairsville, Ohio 43950, for Plaintiff-Appellee, No Brief Filed, and

*Atty. Neal Schuett*, Rittgers & Rittgers, 121 West High Street, Oxford, Ohio 45056, for Defendant-Appellant.

Dated: February 26, 2020

**D'Apolito, J.**

{¶1}    Appellant, Cory Julius Smith, appeals from the March 21, 2019 judgment of the Belmont County Court of Common Pleas convicting him for possession of drugs and assault upon a peace officer following a jury trial and sentencing him to 11 years in prison. On appeal, Appellant argues (1) his sentence is contrary to law, (2) Appellee, the State of Ohio, presented insufficient evidence, (3) his convictions were against the manifest weight of the evidence, and (4) he received ineffective assistance of counsel. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2}    On August 3, 2017, Appellant was indicted by the Belmont County Grand Jury on four counts: count one, possession of drugs, a felony of the second degree, in violation of R.C. 2925.11(A) and (C)(4)(d); count two, possession of drugs, a felony of the second degree, in violation of R.C. 2925.11(A) and (C)(6)(d); and counts three and four, assault upon a peace officer, felonies of the fourth degree, in violation of R.C. 2903.13(A) and (C)(5).[1] Appellant was appointed counsel and pleaded not guilty at his arraignment.

{¶3}    A jury trial commenced on February 21, 2019.

{¶4}    The State presented three witnesses: Deputies Jason Schwarck and Brian Carpenter, with the Belmont County Sheriff's Department; and Patrolman Henry Sam Martin, with the Bellaire Police Department.

{¶5}    At around 11:00 p.m. on June 14, 2017, Deputy Schwarck stopped Tabitha Burch's car due to a vehicle defect and a traffic violation, i.e., no license plate light and failure to use a turn signal. (2/21/19 Jury Trial T.p. 190). Burch was the driver, Shermika Griffin was the front seat passenger, and Appellant was the backseat, driver's side passenger. It "caught [Deputy Schwarck's] attention" when he first observed Appellant with "his arm laying over his leg in between his two legs in the backseat, which was an uncommon place for his arm to be laying straight down in between his legs[.]" (T.p. 191).

---

[1] Count two was dismissed prior to trial.

Case No. 19 BE 0013

Appellant's positioning drew Deputy Schwarck's attention down to the area of Appellant's crotch, where he saw a "bulge." (T.p. 200).

{¶6} Deputy Carpenter and Patrolman Martin arrived at the scene for back-up assistance. Deputy Carpenter testified that Appellant's body language was "dramatically different" than the two front passengers, who appeared "normal" and not "too nervous." (T.p. 268-269). Appellant exhibited "very - - suspicious-looking behavior." (T.p. 269). Deputy Carpenter explained "[n]ot Appellant's physical appearance, but the way he presented himself, the rigidness, his arm between his legs." (T.p. 270). "[Appellant] was soft spoken, didn't really want to have a conversation, and the fact that it looked like he was trying to conceal something." (*Id.*). Deputy Carpenter also "saw a bulge * * * kind of his lower waistband." (*Id.*).

{¶7} At that point, Deputy Schwarck deployed his K-9 and the occupants were asked to step out of the vehicle. Deputies Schwarck and Carpenter believed Appellant needed to be patted down for a weapons check. Appellant refused. Deputy Carpenter told Appellant to put his hands on the back of the car and the officers patted him down. Deputies Schwarck and Carpenter felt something in Appellant's crotch/waistband area. Deputy Carpenter described that it felt "firm," about "the size of a baseball." (T.p. 274). Deputy Carpenter could hear something "crinkling," like "a plastic baggy-type object." (*Id.*). Based on his training and experience, Deputy Carpenter "felt overly confident that it was narcotics" and he knew "it was a lot of it." (*Id.*).

{¶8} The officers advised Appellant that he was being detained. Deputy Carpenter put Appellant's right hand in a handcuff and then Appellant "began to pull away, tense up, and eventually tried to run." (T.p. 202). Patrolman Martin described Appellant as "feisty" and "started to resist." (T.p. 247-248). A struggle ensued and the officers and Appellant ended up on the ground slightly underneath the car. While trying to control Appellant's legs, Patrolman Martin was struck several times.

{¶9} Deputy Carpenter further testified that Appellant's right arm was under the vehicle. Deputy Schwarck indicated that Appellant tossed something underneath, toward the front of the car, which turned out to be one large bag with multiple bags of cocaine inside. The total amount was 24.6 grams of cocaine. (T.p. 356-357). Appellant bit Deputy

Schwarck's hand before the officer was able to get the handcuff on Appellant's other hand.

**{¶10}** At the close of the State's case, defense counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

**{¶11}** Appellant presented one witness: Griffin, a good friend of Appellant's and the front seat passenger. Griffin has struggled with drug addiction over the years. On the night at issue, she and Burch were on their way to purchase drugs and later ended up smoking crack cocaine in the car. While driving, they saw Appellant walking down the street and picked him up. After Burch's vehicle was stopped by police, Griffin and Burch were told to exit and stand in front of the car, while Appellant exited and stood in the back. Griffin claimed that officers were "attacking" Appellant. (T.p. 401). On cross-examination, Griffin testified she did not throw anything under the vehicle and did not see Burch throw anything under the vehicle.

**{¶12}** The jury found Appellant guilty of counts one (possession of drugs, cocaine, in excess of 20 grams but less than 27 grams), three (assault upon a peace officer, Deputy Schwarck), and four (assault upon a peace officer, Patrolman Martin).

**{¶13}** On March 21, 2019, the trial court sentenced Appellant to eight years on count one and 18 months each on counts three and four. The court ordered the sentences be served consecutively for a total of 11 years, with 111 days credit for time served. The court further advised Appellant that post-release control is mandatory up to a maximum of three years. Appellant filed a timely appeal and raises four assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE DEFENDANT'S SENTENCE WAS CONTRARY TO LAW.**

**{¶14}** This court utilizes R.C. 2953.08(G) as the standard of review in all felony sentencing appeals. *State v. Michaels*, 7th Dist. Mahoning No. 17 MA 0122, 2019-Ohio-497, ¶ 2, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

**{¶15}** R.C. 2953.08(G) states in pertinent part:

Case No. 19 BE 0013

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶16} Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12.

{¶17} R.C. 2929.11(A) provides that the overriding purposes of felony sentencing are (1) "to protect the public from future crime by the offender and others"; and (2) "to punish the offender * * * using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶18} R.C. 2929.12 provides a nonexhaustive list of sentencing factors the trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses. The court that imposes a felony sentence "has discretion to determine the most effective way to comply with the purposes and

principles of sentencing." R.C. 2929.12(A). The factors a trial court may consider include the "more serious" factors, such as "[t]he physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim" and "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense." R.C. 2929.12(B)(1) and (2). The court may also consider the "less serious" factors, any recidivism factors, and any mitigating factors listed in R.C. 2929.12(C)-(F).

> R.C. 2929.11 does not require the trial court to make any specific findings as to the purposes and principles of sentencing. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31. Similarly, R.C. 2929.12 does not require the trial court to "use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

*State v. Shaw*, 7th Dist. Belmont No. 15 BE 0065, 2017-Ohio-1259, ¶ 36.

**{¶19}** Appellant specifically contends the trial court erred in considering a dismissed charge before imposing the maximum sentence.

**{¶20}** "Although the trial court's belief that a defendant committed dismissed charges cannot be the sole reason for imposition of a maximum sentence, the trial court can consider dismissed charges when determining an offender's likelihood to recidivate." *State v. Osting*, 3d Dist. Defiance No. 4-18-09, 2019-Ohio-1278, ¶ 24.

**{¶21}** Here, the record is clear that the trial court did not base its maximum sentence solely on the belief that Appellant committed the dismissed charge. Rather, the court also considered the circumstances surrounding the incident, the injury to the peace officers, and Appellant's criminal record.

**{¶22}** At the sentencing hearing, the trial court heard from the attorneys and from Appellant and indicated that it reviewed the presentence investigation report.[2] The trial judge proceeded by stating the following:

---

[2] The PSI lists Appellant's criminal background which is two pages long.

THE COURT: All right. Again, the Court has already considered all of the various requirements under the law. The factors that indicate more serious conduct, more likelihood of recidivism include the following, some of which the State has referred to already: As an adult, Mr. Smith has felony convictions for having weapons under disability; sent to the penitentiary. Escape; sent to the penitentiary. Trafficking in drugs as a second-degree felony; sent to the penitentiary. Trafficking in drugs as fifth-degree felonies; there's two of those, sent to the penitentiary for both. Sale of counterfeit drugs; again, a prison sentence. Improper handling of firearms in a motor vehicle resulted also in a prison sentence.

As an adult, he has misdemeanor convictions for endangering children; falsification; resisting arrest and drug abuse, there's two of those. Of the seven felony convictions, with those seven prison sentences, and I understand [defense counsel's] point that some of those were maybe concurrent. And this is something I have to say, I see this quite often from the judges in the larger counties. I think if the penalties were a little more harsh, maybe recidivism would be less likely. * * * So, again, seven prison sentences, but the aggregate total is nowhere near what this Court believes they should have been for the seriousness of the conduct. * * *

The Court is also going to find that there was another charge against him that was dismissed. In other words, he was not prosecuted. There was, as a result of that matter, found to be – he was found to be in possession of Carfentanil, as the drug that he possessed at that time. But again, he was not prosecuted for that. The Court is aware of that; I'm not going to put that out of my mind, as far as sentencing is concerned.

His refusal to provide information deprives me of any chance for mitigating findings, such as counseling efforts. I understand his comments today. His record appears to be worsening. He's not responded favorably to prior sanctions, as I've already explained. * * * The Court does find, based on

Case No. 19 BE 0013

the testimony, that there was evidence of * * * physical harm and emotional distress to the two peace officers who were involved, and the Court is going to find that there's been no showing of genuine remorse.

On the other hand, the factors that indicate less serious conduct, less likelihood of recidivism are absent in this matter.

Again, I've considered the purposes and principles of sentencing. I've also considered the need for consecutive prison terms. And I'm going to find that those are necessary in this action, so as to protect the public from future crime and to punish this defendant. Consecutive terms are not disproportionate with his conduct, as cited above. The danger he poses to the public is certainly something that must be considered, based on his record. These offenses were committed as part of a course of criminal conduct. The potential harm was so great and unusual that no single prison term adequately reflects the seriousness of his * * * conduct. Finally, his history of criminal behavior shows that consecutive terms are needed to protect the public from him. Therefore, more than minimum sentence is necessary and is otherwise appropriate and reasonable, as are consecutive sentences. A short sentence or a non-consecutive sentence and/or any type of a community control sentence with any combination of sanctions would not adequately punish him and protect the public from future crimes, and would demean the seriousness of his conduct. The factors decreasing seriousness are greatly outweighed by those increasing seriousness. There's more likelihood of recidivism if he is given a short or non-consecutive sentence. All of my findings, I believe, are in accordance with the statutory and case law in effect now in the State of Ohio.

Therefore, Mr. Smith, on Count I, you'll be sentenced to serve eight years in the penitentiary. On Count III, you'll be sentenced to serve 18 months in the penitentiary. And on Count IV, you'll be sentenced to serve 18 months

in the penitentiary.  Those sentences will all be served consecutive to each other, for a total of 11 years in the penitentiary. * * *

(3/18/19 Sentencing Hearing T.p. 7-12).

{¶23}  Also, in its March 21, 2019 judgment entry, the trial court stated:

The Court has considered the record, oral statements, the Presentence Investigation Report with attached Risk Assessment Summary of Undetermined due to Defendant's choice to not respond, and the report from the Eastern Ohio Correction Center (EOCC) finding Defendant inappropriate for placement, as well as the principles and purposes of sentencing in Revised Code 2929.11 and has balanced the seriousness and recidivism factors under Revised Code 2929.12.

(3/21/19 Judgment Entry p. 2).

{¶24}  Accordingly, the record reflects the trial court gave due deliberation to the relevant statutory considerations.  The court considered the purposes and principles of felony sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors under R.C. 2929.12, as evidenced from the record.

{¶25}  As stated, Appellant was sentenced to a total of 11 years in prison following a jury trial.  Specifically, the trial court consecutively sentenced Appellant to eight years in prison on count one, possession of drugs, a felony of the second degree, in violation of R.C. 2925.11(A) and (C)(4)(d); and 18 months each on counts three and four, assault upon a peace officer, felonies of the fourth degree, in violation of R.C. 2903.13(A) and (C)(5).  Thus, the court sentenced Appellant within the statutory ranges under R.C. 2929.14(A)(2)(b) ("For a felony of the second degree committed prior to the effective date of this amendment, the prison term shall be a definite term of two, three, four, five, six, seven, or eight years");[3] and R.C. 2929.14(A)(4) ("For a felony of the fourth degree, the prison term shall be a definite term of six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months").

---

[3] The effective date of the amendment is March 22, 2019.

Case No. 19 BE 0013

{¶26} Further, the record reveals the trial court properly advised Appellant regarding post-release control. Therefore, the court complied with all applicable rules and statutes. As a result, we do not find by clear and convincing evidence that the record does not support Appellant's sentence or that the sentence is contrary to law.

{¶27} Appellant's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF POSSESSION OF DRUGS AND ASSAULT ON A POLICE OFFICER.**

## ASSIGNMENT OF ERROR NO. 3

**DEFENDANT-APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶28} Because Appellant's second and third assignments of error call into question the sufficiency and weight of the evidence adduced at trial, we will address them together to avoid repetition.

"When a court reviews a record for sufficiency, '(t)he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence,

the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.* * *

The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 7th Dist. Mahoning No. 16 MA 0104, 2018-Ohio-2766, ¶ 46-48.

**{¶29}** "'(C)ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447, 678 N.E.2d 891 (1997), quoting *Jenks, supra*, paragraph one of the syllabus.

**{¶30}** For the reasons addressed below, we determine the judgment is not against the manifest weight of the evidence and further conclude it is supported by sufficient evidence.

**{¶31}** Appellant takes issue with the guilty finding for possession of drugs, a felony of the second degree, in violation of R.C. 2925.11(A) and (C)(4)(d), which states:

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

* * *

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A)

of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

* * *

(d) If the amount of the drug involved equals or exceeds twenty grams but is less than twenty-seven grams of cocaine, possession of cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term a second degree felony mandatory prison term.

R.C. 2925.11(A) and (C)(4)(d).

{¶32} Appellant also takes issue with the guilty findings for assault upon a peace officer, felonies of the fourth degree, in violation of R.C. 2903.13(A) and (C)(5), which states:

(A) No person shall knowingly cause or attempt to cause physical harm to another * * *.

* * *

[(C)](5) If the victim of the offense is a peace officer * * * while in the performance of their official duties, assault is a felony of the fourth degree.

R.C. 2903.13(A) and (C)(5).

{¶33} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶34} This court's review of the record establishes that there was ample proof that Appellant knowingly possessed cocaine weighing between 20 and 27 grams and that he knowingly caused or attempted to cause physical harm to two peace officers while in performance of their official duties pursuant to R.C. 2925.11(A) and (C)(4)(d) and R.C. 2903.13(A) and (C)(5).

Case No. 19 BE 0013

**{¶35}** As stated, Deputy Schwarck stopped Burch's car due to a vehicle defect and a traffic violation. Burch was the driver, Griffin was the front seat passenger, and Appellant was the backseat passenger. It "caught [Deputy Schwarck's] attention" when he first observed Appellant with "his arm laying over his leg in between his two legs in the backseat, which was an uncommon place for his arm to be laying straight down in between his legs[.]" (2/21/19 Jury Trial T.p. 191). Deputy Schwarck saw a "bulge" near the area of Appellant's crotch. (T.p. 200).

**{¶36}** Back-up officers, Deputy Carpenter and Patrolman Martin, arrived at the scene. Deputy Carpenter testified that Appellant's body language was "dramatically different" than the two front passengers; Appellant exhibited "very - - suspicious-looking behavior;" i.e., "[n]ot Appellant's physical appearance, but the way he presented himself, the rigidness, his arm between his legs." (T.p. 268-270). Deputy Carpenter further indicated that Appellant "didn't really want to have a conversation;" it appeared Appellant "was trying to conceal something;" and Deputy Carpenter also "saw a bulge" near Appellant's lower waistband. (T.p. 270).

**{¶37}** The occupants were asked to step out of the vehicle. Deputies Schwarck and Carpenter believed Appellant needed to be patted down for a weapons check. Appellant refused. Deputy Carpenter told Appellant to put his hands on the back of the car and the officers patted him down. Deputies Schwarck and Carpenter felt something in Appellant's crotch/waistband area. Deputy Carpenter described that it felt "firm," about "the size of a baseball." (T.p. 274). Deputy Carpenter could hear something "crinkling," like "a plastic baggy-type object." (*Id.*). Based on his training and experience, Deputy Carpenter "felt overly confident that it was narcotics" and he knew "it was a lot of it." (*Id.*).

**{¶38}** Deputy Carpenter put Appellant's right hand in a handcuff and then Appellant "began to pull away, tense up, and eventually tried to run." (T.p. 202). Patrolman Martin described Appellant as "feisty" and "started to resist." (T.p. 247-248). A struggle ensued and the officers and Appellant ended up on the ground slightly underneath the car. While trying to control Appellant's legs, Patrolman Martin was struck several times.

**{¶39}** Deputy Carpenter further testified that Appellant's right arm was under the vehicle. Deputy Schwarck indicated that Appellant tossed something underneath, toward

Case No. 19 BE 0013

the front of the car, i.e., one large bag with multiple bags of cocaine inside. The total amount was 24.6 grams of cocaine. (T.p. 356-357). Appellant bit Deputy Schwarck's hand before the officer was able to get the handcuff on Appellant's other hand.

{¶40} Pursuant to *Jenks, supra*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of possession of drugs and assault upon a peace officer were proven. Thus, the trial court did not err in overruling Appellant's Crim.R. 29 motion.

{¶41} Also, the jury chose to believe the State's witnesses. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, as previously stated, the jury did not clearly lose its way in finding Appellant guilty of possession of drugs and assault upon a peace officer. *Thompkins, supra*, at 387.

{¶42} Appellant's sufficiency and manifest weight arguments contained in his second and third assignments of error are without merit.

## ASSIGNMENT OF ERROR NO. 4

**DEFENDANT-APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.**

In order to demonstrate ineffective assistance of counsel, Appellant must show that trial counsel's performance fell below an objective standard of reasonable representation, and prejudice arose from the deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both prongs must be established: If counsel's performance was not deficient, then there is no need to review for prejudice. Likewise, without prejudice, counsel's performance need not be considered. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

In Ohio, a licensed attorney is presumed to be competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In evaluating trial counsel's

Case No. 19 BE 0013

performance, appellate review is highly deferential as there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley* at 142-143, citing *Strickland* at 689. Appellate courts are not permitted to second-guess the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

Even instances of debatable strategy very rarely constitute ineffective assistance of counsel. *See State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987). The United States Supreme Court has recognized that there are "countless ways to provide effective assistance in any given case." *Bradley* at 142, citing *Strickland* at 689.

To show prejudice, a defendant must prove his lawyer's deficient performance was so serious that there is a reasonable probability the result of the proceeding would have been different. *Carter* at 558. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley*, 42 Ohio St.3d 136 at fn. 1, 538 N.E.2d 373, quoting *Strickland* at 693. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair as a result of the performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

* * *

[A]n ineffective assistance of counsel claim cannot be predicated upon supposition. *State v. Watkins*, 7th Dist. Jefferson No. 07 JE 54, 2008-Ohio-6634, ¶ 15. Likewise, proof of ineffective assistance of counsel requires more than vague speculations of prejudice. *Id.* ¶ 55, citing *State v. Otte*, 74 Ohio St.3d 555, 565, 1996-Ohio-108, 660 N.E.2d 711.

*State v. Rivers*, 7th Dist. Mahoning No. 17 MA 0078, 2019-Ohio-2375, ¶ 20-23, 27.

Case No. 19 BE 0013

**{¶43}** Appellant specifically contends that trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel.

> Counsel's failure to file a motion to suppress does not constitute ineffective assistance of counsel per se. *State v. Brown,* 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65, citing *State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). A defendant must prove there was a basis to suppress the evidence in question. *Brown,* 115 Ohio St.3d 55 at ¶ 65.

*State v. Albright*, 7th Dist. Mahoning No. 14 MA 0165, 2016-Ohio-7037, ¶ 58.

**{¶44}** Generally, the decision not to file a motion to suppress does not constitute ineffective assistance of counsel "when doing so was a tactical decision, there was no reasonable probability of success, or there was no prejudice to the defendant." *State v. Nields*, 93 Ohio St.3d 6, 34, 752 N.E.2d 859 (2001).

**{¶45}** Appellant insists that his trial attorney should have filed a motion to suppress because the stop was not valid. However, Deputy Schwarck testified at the jury trial that he stopped Burch's car, in which Appellant was a passenger, due to a vehicle defect and a traffic violation, i.e., no license plate light and failure to use a turn signal. (2/21/19 Jury Trial T.p. 190). Thus, the stop was valid. *See State v. McMillon*, 7th Dist. Columbiana No. 18 CO 0016, 2019-Ohio-2716, ¶ 11, citing *State v. Ward*, 7th Dist. Columbiana No. 10 CO 28, 2011-Ohio-3183, ¶ 35, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("There are two types of valid traffic stops: (1) where police have probable cause that a traffic violation has occurred or was occurring and (2) where police have reasonable articulable suspicion that criminal activity has occurred.)

**{¶46}** In addition, Appellant insists that his trial attorney should have filed a motion to suppress because the search and seizure were not valid. However, as stated, Deputies Schwarck and Carpenter testified that Appellant acted differently than his front seat counterparts. Appellant sat in a suspicious manner with his arm between his legs as if trying to conceal something. The officers saw a "bulge" near Appellant's crotch/lower waistband area.

**{¶47}** Deputies Schwarck and Carpenter believed Appellant needed to be patted down for a weapons check. Appellant refused. Deputy Carpenter told Appellant to put his hands on the back of the car and the officers patted him down. The officers felt something in Appellant's crotch/waistband area. Deputy Carpenter believed it was narcotics. He put Appellant's right hand in a handcuff and then Appellant "began to pull away, tense up, and eventually tried to run." (T.p. 202).

**{¶48}** A struggle ensued and the officers and Appellant ended up on the ground partially underneath the car. While trying to control Appellant's legs, Patrolman Martin was struck several times. Deputy Schwarck indicated that Appellant tossed something underneath, toward the front of the car, which turned out to be one large bag with multiple bags of cocaine inside. Appellant bit Deputy Schwarck's hand before the officer was able to get the handcuff on Appellant's other hand.

**{¶49}** Based on the facts presented, the search and seizure were valid. *See State v. Hughley*, 7th Dist. Mahoning No. 09 MA 200, 2010-Ohio-6010, ¶ 10, citing *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868 (1968) ("[A]n officer is authorized to perform a limited pat-down search for weapons as a safety precaution if there is a reasonable suspicion that the person stopped may be armed and dangerous"); *State v. McCoy*, 6th Dist. Lucas No. L-97-1393, 1998 WL 526734, *2 (Aug. 21, 1998), citing *U.S. v. Craft* (C.A.8 1994), 30 F.3d 1044, 1045 (drug seizure valid during pat down search when incriminating character immediately apparent by touch); *U.S. v. Ashley* (D.C.Cir.1994), 37 F.3d 678, 680-682 (drugs felt during pat down search valid because immediately apparent to experienced officer).

**{¶50}** Accordingly, a motion to suppress would not have been successful and Appellant can show no prejudice in trial counsel's tactical decision not to file one. Pursuant to *Strickland, supra,* Appellant fails to show that his counsel's performance was deficient and that the deficient performance prejudiced the defense.

**{¶51}** Appellant's fourth assignment of error is without merit.

## CONCLUSION

**{¶52}** For the foregoing reasons, Appellant's assignments of error are not well-taken. The judgment of the Belmont County Court of Common Pleas convicting Appellant

for possession of drugs and assault upon a peace officer following a jury trial and sentencing him to an 11-year sentence is affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

Case No. 19 BE 0013

—————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**